FILED
Jun 02 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
|---|---|
| v. | ) |
| ANDREW STEELE FLINDERS | ) Case No. **CR 20-70687-MAG** |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 22, 2020__ in the county of __Santa Clara__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(B) | Possession with Intent to Distribute 50 Grams and More of a Mixture and Substance Containing Methamphetamine |
| | MAXIMUM PENALTIES:<br>Imprisonment:  minimum 5 years, maximum 40 years<br>Fine: $5,000,000<br>Supervised Release:  minimum 4 years, maximum life<br>Special Assessment:  $100,  Potential Immigration Consequences |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Russell Lacy.

☒ Continued on the attached sheet.

Approved as to form  /s/ Maria Perez
                      *Assistant U.S. Attorney*

/s/ Russell Lacy  VKD w/permission
*Complainant's signature*

Russell Lacy, Special Agent FBI
*Printed name and title*

Sworn to before me via telephone pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: June 1, 2020

City and state: San Jose, CA

/s/ Virginia K. DeMarchi
*Judge's signature*

Hon. Virginia DeMarchi
*Printed name and title*

## AFFIDAVIT OF FBI SPECIAL AGENT RUSSELL LACY IN SUPPORT OF THE APPLICATION FOR AN ARREST WARRANT

I, Russell Lacy, Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation and have been since July 2019. I am currently assigned to the San Jose Violent Crime Unit of the FBI's San Francisco Field Division. Prior to becoming an FBI Special Agent, I was an Information Technology Project Manager for the Charlotte Douglas Airport in Charlotte, North Carolina.

2. My assignments include investigating individuals who are involved in the illegal possession and transfer of firearms, violent crimes involving firearms, and narcotics trafficking. I completed five months of FBI Special Agent Basic Training at the FBI academy in Quantico, Virginia. During the course of my employment with the FBI, I have investigated and assisted in the investigations of criminal violations relating to firearms and/or narcotics. During these investigations, I have participated in and utilized the following investigative tools: conducting physical surveillance, analyzing phone records obtained from pen registers, trap and trace devices, and physical devices, and collecting and processing evidence.

3. This Affidavit is made in support of a complaint charging Andrew Steele Flinders (FLINDERS) with violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), Possession with Intent to Distribute 50 Grams and More of a Mixture and Substance Containing Methamphetamine. As set forth in detail below, there is probable cause to believe that on or about January 22, 2020, FLINDERS possessed 50 grams and more of a mixture containing methamphetamine with intent to distribute.

4. The information contained in this Affidavit is based upon my training and experience, my personal knowledge of this investigation, and information provided to me by other agents and law enforcement officials who have assisted in this investigation and have experience investigating the violations of narcotics and firearm laws. This Affidavit is intended

to provide probable cause to support the issuance of the complaint and arrest warrant and does not set forth all of the information of which I am aware. The Affidavit is limited to the facts relevant and necessary to establish probable cause for the requested arrest warrant.

## PROBABLE CAUSE

### Initial Criminal Investigation

5. Since August 7, 2019, the Santa Clara County Specialized Enforcement Team (S.C.C.S.E.T.) has been investigating multiple fentanyl-related overdose deaths throughout Santa Clara County.

6. On August 21, 2019, the Santa Clara Police Department received a call for service to a home in Santa Clara, California, located in the Northern District of California, for an unresponsive male. The male was later pronounced dead at the scene. The Santa Clara County Coroner examined the decedent's body and determined that the decedent's blood contained fentanyl. During the investigation into the decedent's death, law enforcement identified FLINDERS as the suspected source of Oxycodone pills recently purchased by the decedent. Specifically, law enforcement information indicated that FLINDERS had sold the decedent "M Box 30s." Based on my training, experience, and conversations with other law enforcement officers, I know that "M Box 30s" refer to Oxycodone pills that are blue in color and have the letter "M" on one side and the number "30" on the other side. Furthermore, I know that these types of pills were the cause of death for multiple victims throughout Santa Clara County within the last year due to the fact that the pills are sometimes fake and laced with fentanyl.

### Search Warrant for FLINDERS' Residence, Person and Vehicle

7. On January 17, 2020, the Honorable Judge Jacqueline Arroyo signed a state search warrant for FLINDERS' residence (the Residence) at 1814 Canal Way in San Jose, California, located in the Northern District of California. The search warrant included search of FLINDERS' person and vehicles.

8. On January 22, 2020, law enforcement executed the search warrant. Flinders was observed leaving the area in his vehicle and was detained a short while later. During a search of FLINDERS' person, law enforcement located $2,081 in U.S. currency. A house key for 1814 Canal Way was found in FLINDERS' pocket and FLINDERS stated that he lived at the address with his minor child and the child's mother.

9. At the Residence, law enforcement located an Apache brand black plastic box in a closet just inside the front door. The box was on the top shelf of the closet, covered with a blanket, and was secured with two padlocks. Law enforcement used the keys found on FLINDERS' key ring to open the locks and access the contents of the black plastic box. Inside the box, law enforcement located, to include but not limited to, the following items:

   a. Tupperware with a black tar-like substance recognized by the officer as heroin, gross weight 266.2 grams;
   b. four plastic baggies containing compressed brown powder recognized by the officer as heroin;
   c. eleven plastic bindles containing a substance recognized by the officer as heroin, gross weight 24.3 grams;
   d. a plastic baggie containing a substance recognized by the officer as heroin, gross weight 23.3 grams;
   e. a heat-sealed bag containing a compressed white rock powder which the officer recognized could be any number of substances, including cocaine, white heroin or powdered fentanyl, total gross weight 510.2 grams;
   f. an opened heat-sealed type bag containing a compressed white rock powder, gross weight 277.9 grams;
   g. a plastic baggie containing a white rock powder, gross weight 15.2 grams;
   h. a heat-sealed bag containing white crystalline powder recognized by the officer as methamphetamine, gross weight 274 grams;

    i. a zip lock baggie containing a substance recognized by the officer as methamphetamine, gross weight 58.9 grams;

    j. one heat-sealed bag and one plastic baggie containing approximately 500 pills recognized by the officer as Oxycodone pills; the pills were light blue/green in color and stamped with an "M" on one side and "30" on the other side, gross weight 112.9 grams;

    k. a plastic baggie containing clear pill capsules containing an unknown brownish substance, gross weight 12.7 grams;

    l. a plastic bindle containing one pill recognized by the officer as Oxycodone; the pill was dark blue in color and stamped with an "M" on one side and "30" on the other side;

    m. a plastic baggie containing an unknown number of broken up pills recognized by the officer as Oxycodone pills, gross weight 2.1 grams;

    n. Smith and Wesson .38 caliber revolver, S&W SPL, serial number CSN0538, loaded with five rounds of Winchester brand .38 caliber ammunition; and

    o. a Taurus revolver, model "The Judge," serial number DN121651, which the officer noted meets the definition of a short-barrel shotgun and is an illegal firearm under California law.

10. In the living room, law enforcement located a bag behind the couch. Inside the bag was $25,050 in U.S. currency in mixed denominations. In a pair of boots located next to the couch, law enforcement located $4,612 in U.S. currency in mixed denominations. In another pair of shoes next to the couch, law enforcement located $680 in U.S. currency in the left shoe, and FLINDERS' social security card and a T-Mobile receipt in the right shoe.

11. In a cabinet above the stove in the kitchen, law enforcement located, to include but not limited to, the following items:

    a. a functional digital scale with suspected heroin residue on it;

    b. an Advil brand pill bottle containing a plastic baggie containing approximately 25 pills recognized by the officer as Oxycodone pills; and

    c. a plastic bag containing self-sealing currency straps.

12. Law enforcement recognized the Oxycodone pills located in the kitchen and black plastic box to be consistent with fentanyl-laced pressed pills located throughout Santa Clara County, which have been responsible for multiple overdose deaths.

13. Law enforcement searched FLINDERS' vehicle and located three cellular phones and an iPad. Law enforcement also found a self-storage rental agreement from Oakland Road Self Storage for unit number 2165 (the Storage Unit) located at 1799 Oakland Road in San Jose, California. The agreement showed FLINDERS was the renter of unit 2165.

**Search Warrant for FLINDERS' Storage Unit**

14. Later on January 22, 2020, law enforcement obtained a search warrant for the Storage Unit, located in the Northern District of California. Inside the Storage Unit, law enforcement located a plastic storage container which contained, to include but not limited to, the following items:

    a. "Armo Tech" body armor;

    b. COBRAY, model PM-11, 9mm pistol, serial number 94-0002989;

    c. Mossberg shotgun, model 500, caliber 12 gauge, with an obliterated serial number;

    d. Russi .357 caliber revolver, serial number F015650; and

    e. Green ammunition box containing 94 rounds of 12 gauge ammunition, 50 rounds of .32 caliber ammunition, 5 rounds of .410 ammunition, 6 rounds of .357 ammunition, one box of 25 rounds of 12 gauge ammunition, two boxes of 25 rounds of 12 gauge ammunition, two boxes of 25 rounds of .38 special ammunition, one box of 50 rounds of .9mm ammunition, one box of 40 rounds of .380 ammunition, and one round of 12 gauge ammunition.

15.     Law enforcement also located a safe inside the Storage Unit which contained, to include but not limited to, a social security card, California driver's license, and medical marijuana card all in the name of "Andrew Steele Flinders," and a Blockbuster card in the name of "Andrew Flinders."  A clear plastic container was located in the Storage Unit that contained a cash receipt addressed to "Andrew Flinders."

**Analysis of Methamphetamine Found at FLINDERS' Residence**

16.     The two above referenced suspected items of methamphetamine found at the Residence were sent to the County of Santa Clara Crime Laboratory.  The items were found to weigh approximately 260.5 grams and 54.17 grams, respectively, for a total weight of 314.67 grams.  The laboratory tested one item, weighing approximately 260.5 grams, and concluded the substance was methamphetamine. Based on my training and experience, I know that methamphetamine is a Schedule II controlled substance.

17.     Based on my training, experience, and conversations with other law enforcement agents, I know the average dosage of methamphetamine varies depending on the user.  On average, a methamphetamine user consumes approximately .1 grams and up to .25 grams of methamphetamine per dose. Based on my training, experience, and conversations with other law enforcement agents, I know the average methamphetamine dose lasts approximately six to eight hours.  Therefore, on average, users take two to four doses of methamphetamine a day.

18.     Based on my training, experience, and conversations with other law enforcement agents, I know it is uncommon for methamphetamine users to possess more than their next couple doses of methamphetamine. This is out of fear of being caught by law enforcement with a large amount of drugs, as well as out of fear that a fellow drug user will take it from them.

19.     By contrast, based on my training, experience, and conversations with other law enforcement agents, I know drug distributors often keep a drug supply on hand for immediate sales. This supply is often kept on their person, immediate property, house, or vehicle.

20.     Based on the gross weight amount of methamphetamine located in the Residence

and based on the average dosage, FLINDERS had between 1,258 and 3,146.7 doses of methamphetamine in his possession. Based on my training and experience, the approximately 314.67 grams of methamphetamine located in FLINDERS' residence at the time of his arrest is an amount consistent with that of methamphetamine distribution.

**Fentanyl, Heroin, and Cocaine Found at FLINDERS' Residence**

21. The above referenced suspected items of Oxycodone pills, suspected to be laced with fentanyl, were sent to the County of Santa Clara Crime Laboratory. The laboratory found one item to contain 858 pills. One pill was analyzed with a positive result for fentanyl. Additionally, a second item containing one pill was analyzed with a positive result for fentanyl. Based on my training and experience, I know that fentanyl is a Schedule II controlled substance.

22. The above referenced suspected items of heroin, weighing approximately 980.35 grams gross weight, were sent to the County of Santa Clara Crime Laboratory. The laboratory analyzed one item, weighing 154.3 grams with a positive result for heroin. Based on my training and experience, I know that cocaine is a Schedule I controlled substance.

23. The above referenced items of white rock powder, weighing 769.1 grams gross weight, were sent to the County of Santa Clara Crime Laboratory. The laboratory tested one item, weighing approximately 500.5 grams, with a positive result for cocaine. Based on my training and experience, I know that cocaine is a Schedule II controlled substance.

**Evidence of Drug Trafficking**

24. Based on the different types of controlled substances located in FLINDERS' residence, the combined total of 314.67 grams of methamphetamine, the presence of a working scale with narcotics residue on it, the $30,342 in cash stored in FLINDERS' residence, the $2,081 in cash on FLINDERS' person, and the currency bands, I believe that FLINDERS is engaged in the illegal trafficking of methamphetamine.

25. I know from my training and experience that narcotics traffickers are especially susceptible to armed robberies due to the heavy reliance on cash transactions in the industry. I

also know from my training and experience that narcotics traffickers frequently arm themselves with firearms in order to safeguard their contraband, facilitate their commission of illegal activity, and to protect themselves from rivals and competitors. I also know from my training and experience that narcotics traffickers use body armor to minimize and prevent serious injury from adversaries. Therefore, I believe the presence of firearms stored with the narcotics at FLINDERS' residence, and FLINDERS' possession of body armor, is further evidence that FLINDERS possessed methamphetamine with the intent to distribute it.

## **CONCLUSION**

26.     Based on the foregoing, there is probable cause to believe that on or about January 22, 2020, FLINDERS possessed with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine, in violation of Title 21 U.S.C § 841(a)(1) and (b)(1)(B).

27.     I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

/s/Russell Lacy  VKD w/permission<br>
Russell Lacy<br>
Special Agent<br>
Federal Bureau of Investigation

Sworn and subscribed to before me over the telephone pursuant to Fed. R. Crim. P. 4.1 and 4(d) and signed by me on this ___1st___ day of June 2020.

_____
HON. VIRGINIA DEMARCHI
UNITED STATES MAGISTRATE JUDGE

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: [X] COMPLAINT  [ ] INFORMATION  [ ] INDICTMENT  [ ] SUPERSEDING

**OFFENSE CHARGED**

COUNT ONE: (21 U.S.C. § 841(a)(1) and (b)(1)(B)) - Possession with Intent to Distribute 50 Grams and More of a Mixture and Substance Containing Methamphetamine

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

PENALTY:
Imprisonment: minimum 5 years, maximum 40 years
Fine: $5,000,000
Supervised Release: minimum 4 years, maximum life
Special Assessment: $100

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

**DEFENDANT - U.S**

ANDREW STEELE FLINDERS

DISTRICT COURT NUMBER

CR 20-70687-MAG

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

FBI S/A RUSSELL LACY

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
[ ] U.S. ATTORNEY  [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form: David L. Anderson

[X] U.S. Attorney  [ ] Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): AUSA Maia Perez

**DEFENDANT**

**IS NOT IN CUSTODY**
1) [ ] Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction    [ ] Federal  [ ] State
6) [X] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution
Santa Clara

Has detainer been filed?  [ ] Yes  [ ] No    If "Yes" give date filed

DATE OF ARREST: Month/Day/Year
Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY: Month/Day/Year

FILED
Jun 02 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

[ ] This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
[ ] SUMMONS  [ ] NO PROCESS*  [X] WARRANT    Bail Amount: None

If Summons, complete following:
[ ] Arraignment  [ ] Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:            Before Judge:

Comments: